Argued and submitted on report of referee December 22, 1933; defendant disbarred January 23, 1934.

STATE ex rel. SETON et al. *v.* ARNOLD

(28 P. (2d) 846)

*Will H. Masters,* of Portland, for plaintiffs.
*Wilson H. Scott,* of Portland, for defendant.

RAND, C. J. This is an original proceeding in this court to disbar J. G. Arnold who has been duly licensed to practice law in this state. It was instituted by the filing of two duly verified petitions on behalf of the chancellors of the Multnomah County Bar Association, each petition charging him with wilful deceit and misconduct in his profession in certain particulars specified therein and constituting such conduct upon his part as would disqualify him from further acting as an attorney at law in this state. He answered the petitions and denied all said charges. The proceedings were then consolidated and referred to the Honorable Earl C. Latourette, circuit judge, to take the testimony as to all said charges and report the same to this court together with his findings of fact and conclusions of law. This has been done.

At the time set for the hearing thereof in this court, both parties applied for leave to take additional testimony. The application was granted and the testimony was taken before us and all said matters have been finally submitted for our determination.

■ One of said charges is that the defendant, while acting as attorney for the Luedinghaus Lumber Company, against which a judgment for $25,000 had been entered in the circuit court for Multnomah county in an action there pending wherein George L. Gardner and E. S. Grammer were plaintiffs and said lumber company was defendant, and while employed to conduct an appeal to this court from said judgment, was given a check drawn by said lumber company payable to the order of Cloyd D. Rauch for the sum of $507.90 and was instructed to deliver the check to Rauch in payment of his fees as the official court reporter for preparing a transcript of the testimony taken and proceedings had in the trial of said cause in the circuit court. That instead of delivering the check to Rauch and receiving said transcript from him, which had already been prepared and certified to by the official court reporter, the defendant wrongfully and unlawfully forged the name of Rauch on the back of said check and thereupon indorsed the same with his own name, cashed the check and converted the proceeds to his own use, and that, by reason thereof, no proper bill of exceptions could be prepared or were prepared within the time allowed and the Luedinghaus Lumber Company lost its right of appeal.

The referee found the foregoing facts to be true and the evidence clearly sustains the charge.

One of the charges specified in the second petition grows out of the following facts: On and prior to January 22, 1931, the defendant for some nine or ten

years had been and was acting as attorney for one M. A. Jennings and his wife. Jennings was a former railway employee and, while so employed, had sustained a serious physical accident which incapacitated him for work, for which he had received as compensation for the injury a considerable sum of money. Both Mr. and Mrs. Jennings had absolute trust and confidence in the integrity of the defendant and, on said day, were induced by him to turn over to him $3,500 in money. The testimony indicates that neither of said parties had had much business experience and were people who could be easily imposed upon. There is some dispute as to the nature of this transaction, but the best evidence of it is that contained in a letter written by the defendant to Mr. Jennings on the date when this money was delivered to him. It reads as follows:

"January 22nd, 1931

M. A. Jennings
Portland, Oregon.
Dear Sir:

Confirming our agreement, it is understood that you are to deposit in your name $3500.00 and I am to add to this $1500.00, making a total of $5,000.00, which is to be carried in your name, and no one will be able to draw one dollar of this money but you. You are to have $100.00 per month charged against my interest in this fund. I am always to keep this deposit at least $1,000.00 above what you have in it, or always keep it to the total sum of $4500.00. When this amount is increased to $6,000.00 or more you agree to draw all in excess of $5,000.00 and turn it over to me. You are to give me one day's notice before drawing your $5,000.00 out of this fund, but you may do it at any time, after having given me one day's notice. The first $100.00 drawn by you is to be on the 23d day of February, 1931, and you are to draw $100.00 on the 23d day of each month thereafter as long as you desire to let this

agreement stand. When this agreement is cancelled, you are then to draw your $3500.00 together with any part of the $100.00 due you at that time and any balance in the fund is to be drawn and turned over to me. In case of your death, this matter is to be handled by your wife, Faye Jennings.

Very truly yours,
J. G. Arnold,
JGA:IB                E. R. Schiller, Witness.''

Subsequently and on April 7, 1931, the defendant induced Jennings to turn over to him $1,250 more, upon the receipt of which Arnold wrote as follows:

''April 7th, 1931

Mr. and Mrs. M. A. Jennings,
Portland, Oregon.

This will acknowledge receipt of $1250.00, making a total of $5500.00, which is used by me and carried in the name of 'M. A. Jennings', at Russell Miller & Co., upon which you are to receive a total sum of $150.00 on the first of each month, the first payment of $150.00 to be made on the first day of May, 1931.

You are to draw any, or all, of your money, upon ten (10) days written notice. The $5500.00 may be drawn by you, or any part thereof, and the $150.00 paid each month is no part of the principal, but is only your part of interest and profits.

Very truly yours,
JGA-IB                J. G. Arnold.''

Instead of performing his agreement in accordance with the terms of his letters, the defendant withdrew the money from the place of deposit and used the same for speculation in the stock and grain markets, where it was lost. That Arnold, at the time he received the money, could have had no intention of performing his agreement with Jennings and his wife, we think, is manifest from the mere reading of these two letters. How these two amounts could be kept on deposit and subject to the check of Jennings and, at the same time,

earn sufficient to enable Arnold to pay, without decreasing the principal, $100 per month to Jennings as stated in the first letter, or $150 per month as stated in the second letter, has not been explained nor do we deem it capable of any reasonable explanation. It was, however, a proposition which would be attractive to persons such as the evidence shows the Jenningses to be. That both Jennings and his wife were misled and deceived by defendant and were induced thereby to furnish him with these moneys is clearly established by their testimony, and no reasonable explanation has been offered by the defendant. It is true that a part of said moneys has been repaid by defendant, but the same was repaid at intervals in small sums and only upon the insistent demands of the Jenningses. A considerable part has not been repaid.

The third and only remaining charge is that on July 25, 1932, Mrs. Jennings delivered to the defendant for collection a promissory note payable to her order for $250. This note was collected by defendant, but instead of paying Mrs. Jennings the money, when collected, he concealed the fact for a while and converted the whole sum to his own use, and subsequently paid her at intervals and in small amounts a part only of the money.

In fairness also to the defendant, it should be stated that, after the facts became known in respect to the Rauch check, Arnold paid Rauch's claim in full, but the rights of the Luedinghaus Lumber Company had been lost and were not saved by such repayment.

■ Clearly, such conduct upon the part of an attorney at law is reprehensible in the highest degree. Such conduct upon the part of some tends to bring the whole profession into disrepute. The learned circuit

judge who acted as referee has recommended suspension and not disbarment and this largely because, after these matters had been discovered, the defendant seems to have made a genuine attempt in each instance to repay as far as he could the moneys of which the Jenningses had been defrauded. Proceedings of this nature, that is to say, a proceeding to disbar an attorney at law, who has been duly licensed, for misconduct in his profession is not a criminal proceeding but is a proceeding sui generis. As said in *Re Richards,* (Mo.) 63 S. W. (2d) 672:

"* * * Its purpose is not to punish but to ascertain those whose conduct has demonstrated their unfitness to practice law and to deprive them of their previously acquired right to serve as officers of the court, and the inquiry is not limited to conduct in the presence of the court or to matters connected with a case in court."

Section 32-501, Oregon Code 1930, provides that:

"Any member of the bar of this state shall be disbarred by the supreme court, upon proper proceedings for that purpose, whenever it shall appear to that court that his conduct has been such that if he were then applying for admission to the bar his application should be denied."

It is clear that, if the defendant were now applying for admission to the bar and the charges now under consideration were made and established, as they have been here, it would be the duty of this court to deny his application. We find from the evidence that these charges have been sustained and that the defendant should be disbarred from the further practice of law in this state and his license be revoked. It is so ordered.

KELLY, J., did not participate in this opinion.